

Brian Pete
77 Water Street, Suite 2100
New York, New York 10005
Brian.Pete@lewisbrisbois.com
Direct: 212.232.1363

LEWIS BRISBOIS BISGAARD & SMITH LLP

September 25, 2020

File No. 11414.813

*[handwritten: The attached settlement agreements are approved as fair, reasonable and adequate including the award of attorney's fees which the Court also finds to be fair and reasonable, particularly in light of the detailed submission in counsel's 9/30/20 letter. The Clerk is directed to enter Judgment dismissing 20CV2619 and 20CV2660 in accordance with the Settlement Agreements. The Clerk is also directed to close those cases and to close all pending motions.]*

**VIA ECF**
The Honorable John G. Koeltl
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *DiMauro v. 189 Chrystie Street Partners, LP et al.*
      *Ulwick v. 189 Chrystie Street Partners, LP et al.*
      Docket No.: 1:20-cv-02619-JGK

Dear Judge Koeltl:

        We are counsel to Defendants 189 Chrystie Street Partners, LP d/b/a The Box NYC, Variety Worldwide, LLC, Simon Hammerstein, and Javier Vivas (collectively, "Defendants") in the above-referenced matter. We write jointly with counsel for Plaintiffs Mariele DiMauro and Cassandra Ulwick ("Plaintiffs") (collectively the "Parties") to respectfully request that the Court approve the settlement agreements (the "Agreements") with respect to Plaintiffs' FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1] The Agreements are attached hereto as Exhibit A.

*[handwritten: So ordered. John G. Koeltl U.S.D.J. 10/26/20]*

---

        [1] Plaintiffs also bring claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), violation of 26 U.S.C. 7434(a) for fraudulent filing of Plaintiffs' W-2 forms, common law claims such as breach of an implied covenant of good faith and fair dealing, breach of an express and implied contract, fraud in inducement and fraudulent misrepresentation, and discriminatory pay practices based on gender and constructive discharge in violation of the New York City Human Rights Law, which while resolved as part of the Parties' Agreements, do not require court approval for dismissal under *Cheeks*. See *Valdovinos v. 9300 Realty Mgt.*, 2019 U.S. Dist. LEXIS 2751, at *1, n.2 (S.D.N.Y. Jan. 4, 2019) ("Because the parties' (footnote continued)

The Honorable John G. Koeltl
September 25, 2020
Page 2

## I.      **Introduction**

In this action, Plaintiffs allege, *inter alia*, that Defendants failed to pay them minimum wage in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and they also assert claims pursuant to the New York Wage Theft Protection Act ("WTPA") based on Defendants' alleged failure to provide wage notices and wage statements as is required by the WTPA. Defendants deny all of the allegations made against them.

In furtherance of the Parties' mutual desire to avoid the burdens and expense of protracted litigation and to resolve their dispute, they have entered into a settlement, which the parties now request the Court approve as fair and reasonable. The Agreements were achieved via the parties' private settlement discussions following mediation through the SDNY's mediation program.

The Agreement between Plaintiff DiMauro and Defendants provides that the settlement sum, $28,000.00, will be distributed as follows:

- $16,800.00 to Plaintiff DiMauro;

- $11,200.00 to Plaintiff DiMauro's counsel for their attorneys' fees; and

- $0.00 to Plaintiff DiMauro's counsel for their costs.

The Agreement between Plaintiff Ulwick and Defendants provides that the settlement sum, $23,000.00, will be distributed as follows:

- $13,800.00 to Plaintiff Ulwick;

- $9,200.00 to Plaintiff Ulwick's counsel for their attorneys' fees; and

- $0.00 to Plaintiff Ulwick's counsel for their costs.

The Parties jointly represent to the Court that the Agreements: (a) are fair and equitable to all Parties; (b) reasonably resolve a *bona fide* disagreement between the Parties with regard to the merits of the Plaintiffs' claims; (c) contain monetary consideration for the Plaintiffs; and (d) discontinue the

---

non-FLSA-related settlement agreement is confidential and is not subject to judicial review, it shall not be filed on the public docket."); *Chowdhury v Brioni Am., Inc.*, 2017 U.S. Dist. LEXIS 196469, at *13 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve 'bifurcated settlement agreement[s], in which the parties submit their FLSA agreement for court review and approval . . . but enter into a separate [agreement]' that addresses the non-FLSA claims, which does not require judicial[.]"); *Yunda v SAFI-G, Inc.*, 2017 U.S. Dist. LEXIS 65088, at *4 (S.D.N.Y. Apr. 28, 2017) (concluding that bifurcated settlement agreement is permissible and NYLL settlement agreement does not require judicial approval).

The Honorable John G. Koeltl
September 25, 2020
Page 3

action, with prejudice, and on consent. The Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for the consideration set forth in the Release. The Release is the result of arduous arms-length bargaining among the parties and reflects the Parties' desire to settle and compromise fully and finally all of Plaintiffs' wage-and-hour claims asserted in this case and any potential other claims that Plaintiffs have stated their willingness to compromise as part of the agreed-upon settlement terms.

## II.     The Standard

It is well-established that "[c]ourts approve FLSA settlements where they are reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (PAC), 2014 U.S. Dist. LEXIS 157205, at *10 (S.D.N.Y. Nov. 4, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)); *Clark v. Ecolab Inc.*, No. 04 Civ. 4488 (PAC), 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. May 11, 2010); *Johnson v. Brennan*, 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *35 (S.D.N.Y. Sept. 16, 2011); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 04082 (JCF), 2010 U.S. Dist. LEXIS 139136, at *15 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food LLC*, No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *17 (S.D.N.Y. Aug. 23, 2010). Moreover, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *deMunecas,* 2010 U.S. Dist. LEXIS 87644, at *20. That is, as long as the FLSA settlement "reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *17.

In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. The Parties submit that their settlement of Plaintiffs' FLSA claims is fair and reasonable based on the *Wolinsky* factors.

## III.     The Settlement Agreements Are Fair and Reasonable And Should Be Approved

"Before a court will find a settlement fair and reasonable, the parties must provide enough information for the court to examine the *bona fides* of the dispute." *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635 (PAC), 2014 U.S. Dist. LEXIS 144038, at *2 (S.D.N.Y. Sept. 26, 2014). Here, the Settlement Agreements were clearly "reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud*, 2014 U.S. Dist. LEXIS 157205, at *10. Indeed, the settlement in this matter was only reached after a complaint was filed and answered, the parties exchanged pre-mediation disclosures, including payroll records, work schedules, and time entries, the parties drafted and submitted mediation statements to the Court-appointed mediator, and participated in the mediation.

The Honorable John G. Koeltl
September 25, 2020
Page 4

### A. Range of Possible Recovery

189 Chrystie Street employed Plaintiff DiMauro from September 20, 2017 through January 2020 and Plaintiff Ulwick from July 3, 2018 through January 2020 (the "recovery period") as servers who worked on average 10-15 hours a weeks. From the start of her employment to December 30, 2017, DiMauro was paid a cash wage in the amount of $8.75 and tip credit taken was $2.25; from December 31, 2017 until December 30, 2018, she was paid a cash wage in the amount of $8.75 and tip credit taken was $4.25; from December 31, 2018 until the end of Plaintiff's employment, she was paid a cash wage in the amount of $10.00 (after Defendants corrected the minimum wage paid)[2] and the maximum tip credit taken was $5.00.

From the start of her employment to December 30, 2018, Ulwick was paid a cash wage in the amount of $8.75 and tip credit taken was $4.25; from December 31, 2018 until the end of Plaintiff's employment, she was paid a cash wage in the amount of $10.00 (after Defendants corrected the minimum wage paid) and the maximum tip credit taken was $5.00.

Plaintiffs allege that Defendants required them to give their tips to employees whose primary duties were non-tipped duties and were ineligible to receive tips through employer-mandated tip sharing. They further allege that Defendants did not give proper notice to employees regarding Defendants' taking a tip credit to satisfy the minimum wage, or otherwise inform the employees of the provisions of 29 U.S.C. § 203(m). Plaintiffs also allege that Defendants violated the FLSA by improperly taking a tip credit to satisfy Plaintiffs' minimum wage even though other employees who received some of Plaintiffs' tips did not participate in the tip pooling. Finally, Plaintiffs allege that they spent substantial time engaged in non-tipped work (e.g., setting up the bar prior to opening and reached out to customers on social media to promote The Box. through their social media accounts) and that the Defendants applied a tip credit to the non-tipped work.

Defendants refute Plaintiffs' claims. First, the back of the house employees were only added to the tip pool in October 2019. Defendants maintain that the only measure of damages that Plaintiffs can recoup are the tip credit taken. Even if Plaintiffs can show that the tips retained by the back of the house staff need to be redistributed, the redistribution would not go back to the wait staff because the back of the house staff had its own sub pool. Second, Defendants maintain that Plaintiffs did not perform non-tipped work by setting up The Box before it opened as Defendants had other workers set up. Plaintiffs were also provided a tip notice as required by the FLSA. Third, Defendants further maintain that, to the extent Plaintiffs were not paid the minimum wage for non-tipped work and that they were not provided a compliant tip notice, their records show that Plaintiffs' damages would be

---

[2] In or around October 2019, The Box realized that it did not pay the correct minimum wage from January 2019 to October 2019 to some employees, including Plaintiffs. After The Box discovered this error, it retroactively paid these employees, including Plaintiffs, the $1.25/hr rate differential for 10 months.

The Honorable John G. Koeltl
September 25, 2020
Page 5

minimal as they worked on average 10-15 hours per week and would only be entitled to recoup the tip credit taken. Fourth, Plaintiffs are not entitled to compensation for reaching out to customers via their social media accounts as any time spent would be *de minimis*.

Assuming Plaintiffs were not provided a proper tip notice, the total recovery of tip credit taken for each hour that Plaintiffs allegedly worked would be the following: Ulwick's maximum recovery would be approximately $4,363.54 and DiMauro's would be approximately $5,079.99. Then, should the Court find that Defendants "willfully" violated the FLSA, Plaintiffs would be entitled to liquidated damages that would double any amount each Plaintiff is owed to approximately $9,864.98 for DiMauro and $8,147.82 for Ulwick. Accordingly, the agreement to pay Plaintiffs DiMauro $28,000.00 and Ulwick $23,000.00 provides a fair compromise based on the risks that the parties face in moving forward in litigation.

Given these disputed issues, the Parties submit that this settlement is fair and reasonable. *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement").

### B. Avoiding Burdens and Potential Risks of Continued Litigation

As for the second and third *Wolinsky* factors, ongoing litigation would also likely involve costly discovery, including depositions, motion practice over discovery issues and summary judgment, in addition to other expenses associated with trial. Even if successful at both the summary judgment and trial stages, Plaintiffs faced a difficult challenge in recovering a greater judgment than the Settlement Sum obtained here. Indeed, while Plaintiffs contend that they are owed more than the Settlement Sum, Plaintiffs understand that if they were to continue with the litigation they may never receive any money. With litigation expenses only expected to rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C. Arm's-Length Bargaining and Lack of *Cheeks* Admonishments

Next, the parties' arm's-length bargaining over a day of mediation, which was followed by the parties' private settlement negotiations that resulted in an agreement accepted by both parties, as well as the ability to resolve the matter without either party incurring further substantial litigation costs, weigh in favor of finding the settlement fair and reasonable. This case does not involve the litigation of particularly novel and complex issues. Rather, Plaintiffs' wage-and-hour claims involve legal issues that have been litigated in many other cases; therefore, continued litigation likely would not significantly advance the development of the law.

Furthermore, the Agreements here do not contain any terms that would militate against the Court approving them. For instance, the Agreements do not contain a confidentiality clause that would

The Honorable John G. Koeltl
September 25, 2020
Page 6

run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair. *See Mahalick v. PQ N.Y. Inc.*, No. 14-CV-899, 2015 WL 3400918, at *2 (S.D.N.Y. Apr. 30, 2015) (noting that "provisions that impose an obligation on the plaintiff—a gag order, really—to refrain from discussing any aspect of the case or settlement" are inconsistent with the purposes of the FLSA, and declining to approve a settlement agreement with such a term despite the public filing of the proposed agreement (internal quotation marks omitted)). Accordingly, the Court should approve the proposed Agreements as fair and reasonable.

## IV.   The Attorneys' Fees and Costs Payable Under the Settlement Agreements Are Reasonable and Due to be Approved

Under Plaintiffs' professional services-contingency fee agreement with the Plaintiffs' counsel, the settlement agreements provide that Plaintiffs' counsel will receive $11,200 in attorney's fees and $0.00 in costs for DiMauro and $9,200.00 in attorney's fees and $0.00 in costs for Ulwick. According to the retainer agreements, Plaintiffs' counsel is to receive 40% of any recovery and reimbursement for all expenses incurred. To date, Plaintiffs' counsel bore all costs of litigation, excluding filing fees which were separately arranged with counsel, and litigated a risky FLSA/NYLL case without compensation of any kind to date, and his fee has been wholly contingent upon the result achieved.

Here the attorney fee, which accounts for a reasonable fee under the prevailing rate in the applicable jurisdiction in connection with the total settlement amount, is consistent with contingency fee agreements that the Second Circuit commonly approves in FLSA cases.

The reasonable hourly rate is determined by whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *See Blum v. Stenson*, 465 U.S. 886, 896 (1984). However, the Court may adjust the hourly rate to account for other case-specific variables including the factors set forth in *Johnson v. Georgia Highway Express, Inc.*:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved or the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the 'undesirability of the case;'
> (11) the nature and length of the professional relationship with the client; and,

The Honorable John G. Koeltl
September 25, 2020
Page 7

> (12) awards in similar cases.

*See Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (citing *Johnson*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989); *see also Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors). The Court need not make separate findings as to all twelve *Johnson* factors. *Lochren v. Cnty. of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

Plaintiffs seek an hourly rate of $600.00 for the labor of John J. Zidziunas, Esq., who is the owner and managing partner at John J. Zidziunas & Associates, LLC. Attorney Zidziunas is a 2005 graduate of the Nova Southeastern University School of Law and has been practicing law for fifteen (15) years. He was admitted to the New Jersey State Bar in 2005, New York State Bar in 2017, admitted to the United States District Court, Southern District of New York in 2019, and admitted to the United States District Court, Eastern District of New York in 2019. Thirty-three percent (33%) of Attorney Zidziunas' case load concentrates on wage and hour matters, either individual, multi-plaintiff, or collective actions. Before establishing the law firm of John J. Zidziunas & Associates, LLC, Attorney Zidziunas was an attorney at a prestigious regional law firm in northern New Jersey specializing in labor and employment law.

Here, the fee amount of $11,200.00 for DiMauro and $9,200.00 for Ulwick is commensurate with the lodestar amount taking into consideration the time, labor, and other appropriate multipliers in this case, based upon contemporaneous time records maintained by Attorney Zidziunas' office, which are available at the request of the court. Although the lodestar multiplier is determinative only for a common fund settlement, courts have considered it in individual settlements and, in this case, it is in line with a settlement approved in October 2019 in a case with comparable facts and applicable law which was venued in the United District Court for the Southern District for New York, and entitled *Alison Ullo v. Aby Rosen, et al.,* Case No. 18-cv-11281 (KHP), before Hon. Katharine H. Parker, U.S.M.J. The Plaintiffs and the Plaintiffs' counsel have a contingent fee agreement compensating the Plaintiffs' counsel 40% of any settlement plus prepaid costs and expenses. Nothing additional is to be paid by the Plaintiffs to the Plaintiffs' counsel.

The amount provided to Plaintiffs' counsel under the Agreements is fair and reasonable and well within the range of fees typically awarded in cases in this Circuit. *See Fraticelli v. Super Realty Mgmt. LLC*, No. 18 Civ. 397 (GBD), 2018 U.S. Dist. LEXIS 114710 (S.D.N.Y. July 9, 2018); *see also Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337*, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("a fee that is one-third of the fund is typical" in *FLSA* cases); *accord Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); *Palacio v. E\*TRADE Fin. Corp.*, 10 Civ. 4030 (LAP), 2012 WL 2384419 at *6 (S.D.N.Y. June 22, 2012). In line with this authority, the Parties respectfully submit that Plaintiffs' counsel's fee, which includes out-of-pocket costs, is reasonable and should be approved.

---

The Honorable John G. Koeltl
September 25, 2020
Page 8

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court approve the settlement in this matter as set forth above and in the Settlement Agreements, and enter the proposed Order discontinuing the action with prejudice. We would be pleased to attend a conference to address this matter or submit additional information if the Court so requires.

Thank you for your attention to this matter.

Respectfully,

*Brian Pete*

Brian Pete for
LEWIS BRISBOIS BISGAARD & SMITH LLP

cc:     All counsel of record (via ECF)

Case 1:20-cv-02619-JGK   Document 26-1   Filed 09/25/20   Page 1 of 20

# EXHIBIT A

## RELEASE OF CLAIMS AND SETTLEMENT AGREEMENT

WHEREAS, Mariele DiMauro ("DiMauro") alleges that she was formerly employed by 189 Chrystie Street Partners, LP, Simon Hammerstein, Variety Worldwide LLC, and Javier Vivas (collectively, "Defendants") and she has commenced an action in the United States District Court for the Southern District of New York captioned *DiMauro v. 189 Chrystie Street Partners, LP et al.* and assigned Docket No. 1:20-cv-02619-JGK, which was subsequently consolidated with *Cassandra DiMauro vs. 189 Chrystie Street Partners, LP, Simon Hammerstein, Variety Worldwide LLC, Javier Vivas* (the "Action"), in which she alleges that the Defendants failed to properly pay her in compliance with the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"), that Defendants failed to provide a wage notice and/or wage statements in violation of the New York Wage Theft Protection Act ("WTPA"), that Defendants implemented a discriminatory pay structure on the basis of sex/gender and constructively discharged DiMauro in violation of the New York City Human Rights Law ("NYCHRL"), that 189 Chrystie Street willfully filed fraudulent information on Plaintiff's W-2 forms in violation of 26 U.S.C. § 7434, and that Defendants committed common law violations such as breach of an implied covenant of good faith and fair dealing, breach of an express and implied contract, fraud in inducement and fraudulent misrepresentation; and

WHEREAS, Defendants deny all of the allegations asserted by DiMauro in her Complaint and have denied and continue to deny that they have violated any law, rule or regulation or committed any wrongdoing against DiMauro; and

WHEREAS, contemporaneously with the execution of this Release, DiMauro is receiving from Defendants the gross amount of $28,000.00 in full settlement of any and all claims as set forth in paragraph 1 below; and

WHEREAS, the terms and conditions of this Release have been explained to DiMauro by her counsel, who was actively involved in the negotiation of the settlement and of this release, and she covenants that she understands the terms and agrees thereto,

NOW THEREFORE, IT IS AGREED AS FOLLOWS:

1.      In exchange for the payment by Defendants or on their behalf in the amount of $28,000.00;

(a)      DiMauro agrees and covenants that she will dismiss the Action with prejudice against Defendants based on the settlement described herein, and that she has not filed, and she will not cause to be filed, any other claims, actions or other proceedings against Defendants, their officers, directors, owners, shareholders, parents, affiliates, divisions, subsidiaries, members, managers, supervisors, agents, predecessors, professional employer organizations, insurers, and counsel and their agents and employees (collectively, "Releasees") at any time in the future arising out of any facts that are known to exist or that may exist through and including the date of execution of this Release regarding the payment of her wages during or after her employment. In the event that, for any reason, any complaint, appeal, suit, action, charge, claim and/or proceeding is filed or has already been filed by or on behalf of DiMauro other than the Action, she shall take all necessary steps to dismiss or withdraw same with prejudice and she shall not obtain or accept any recovery or relief therefrom;

(b)      DiMauro knowingly and voluntarily releases and forever discharges Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, commissions, controversies, agreements, promises, judgments, obligations, grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which she has raised in this Action or could have raised

2

in this Action against Releasees as of the date of execution of this Release, whether known or unknown, asserted or unasserted, whether brought on an individual basis or as part of a class or collective action.

(c)     It is DiMauro's intention that her execution of this Release will forever bar every claim, demand, cause of action, charge and grievance that is referenced in Paragraph 1(b) herein against Releasees existing at any time prior to and through the date of execution of this Release, and DiMauro covenants not to sue Releasees based on any released claims; and she will pay Releasees' reasonable attorneys' fees and costs incurred if she breaches that covenant.

(d)     DiMauro understands that the Release does not release any claims that she cannot lawfully release. This Release does not prohibit DiMauro from filing a charge with any governmental administrative agency, such as the EEOC, as long as she does not personally seek reinstatement, damages, remedies, or other relief as to any claim that she has released, any right to which she hereby waives.

(e)     In the event that DiMauro institutes, is a party to, or is a member of a class or collective that institutes any claim or action against Releasees arising from conduct which predates this Release, and which is referenced in Paragraph 1(b) herein, she agrees that her claims shall be dismissed or class or collective membership terminated immediately upon presentation of this Release, and she shall execute any papers necessary to achieve this end;

(f)     DiMauro affirms that as of the date of this Release she has been paid and/or has received all leave (paid and unpaid), compensation, tips, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid),

3

compensation, wages, bonuses, commissions and/or benefits are due to her, except as provided in this Release; and

2.  In exchange for the promises made by DiMauro contained in Paragraph 1 above, Defendants agree to provide DiMauro's attorneys with three checks in the total gross settlement sum of twenty-eight-thousand dollars ($28,000.00 ), made payable as follows:

(a)  Eight-thousand-four-hundred dollars ($8,400.00), less applicable deductions and withholdings, payable to DiMauro, for which a Form W-2 will be issued pursuant to IRS regulations in 2020;

(b)  Eight-thousand-four-hundred dollars ($8,400.00), payable to DiMauro;

(c) Eleven-thousand-two-hundred dollars ($11,200.00), payable to John J. Zidziunas & Associates, as and for DiMauro's attorneys' fees and costs, said payments being for and in full consideration and satisfaction of all claims related to the payment of wages that DiMauro has or may have against Releasees, whether known or unknown, asserted or unasserted, including, but not limited to, all claims for legal or equitable relief, any alleged lost wages, back pay, lost income, lost commissions, lost bonuses, lost employee benefits, severance benefits, lost future wages, lost future pay, lost future commissions, lost future bonuses, lost future employee benefits, lost future income, and claims for interest, attorneys' fees, costs and disbursements based on any conduct occurring up to and including the date of the complete execution of this Release (the "Settlement Sum").

(b)  The parties agree that the Settlement Sum will be paid within fourteen days of the date on which the Court issues an Order Approving the parties' Settlement.

4

(c)     Should Defendants fail to timely make any of the payments set forth in paragraph 2(a) of this Agreement, DiMauro shall provide written notice, by certified mail, stating that payment was not timely made. Upon receipt of written notice, Defendants shall have ten days to make payment. Notice should be sent to the attention of Brian Pete, Esq., 77 Water Street, Suite 2100, New York, NY 10005. Should Defendants fail to cure the late payment within ten (10) days of notification, DiMauro may immediately seek enforcement of the settlement agreement as set forth in paragraph 9.

3.     DiMauro understands and agrees that she would not be entitled to receive the Settlement Sum specified herein, except for her execution of this Release, and her fulfillment of all the promises contained in this document that pertain to her.

4.     DiMauro acknowledges and agrees that neither Releasees nor their counsel, nor DiMauro's counsel, have made any representations to DiMauro regarding the tax consequences of any amounts paid pursuant to this Release. To the extent there are any additional tax consequences to DiMauro or Defendants arising from the payment of such portion of the settlement amount other than those normally attendant to W-2 income, DiMauro agrees to indemnify and hold Releasees harmless for all additional taxes, interest and penalties. DiMauro further agrees to indemnify and hold Releasees harmless for any costs, including attorneys' fees, associated with the enforcement of this indemnification provision, should such enforcement measures become necessary.

5.     DiMauro agrees not to seek any interest, fees or costs and agrees to be responsible for the payment of her own attorneys' fees, costs and disbursements, except as provided in this Release.

5

6.      DiMauro agrees to forego and withdraw any claims referenced in Paragraph 1(b), and further agrees to cooperate with Defendants to the extent necessary to obtain judicial approval of this settlement and dismissal of the Action.

7.      DiMauro acknowledges that Defendants have entered into this settlement solely for the purpose of avoiding the burdens and expense of protracted litigation. Further, the parties agree that neither this Release nor the furnishing of consideration for the Release shall be construed as an admission that Defendants or any Releasee have violated any federal, state, or local law (statutory or decisional), ordinance, or regulation, or that Defendants or any Releasee has committed any wrong against DiMauro.

8.      This Release supersedes any prior agreements or understandings pertaining to the subject matter of this Release as addressed above. DiMauro acknowledges that she has not relied on any representations, promises or agreements of any kind made to her in connection with her decision to sign this Release. No other promises or agreements shall be binding or shall modify this Releasee unless in writing and signed by Releasees.

9.      This Release is made in the State of New York and shall be interpreted under the laws of said State. Its language shall be construed as a whole according to its fair meaning and not strictly for or against any Party. The Parties shall request that the Court retain jurisdiction over the Action solely for the purpose of enforcing this Agreement or determining breach of the Agreement. However, if the Court should refuse or decline to accept jurisdiction for any reason, the Parties agree that this Agreement may be enforced in a court of competent jurisdiction located in New York County, New York.

10.      Should any provision of this Release be declared illegal or unenforceable by any court of competent jurisdiction, and such provision cannot be interpreted or modified so as

to be enforceable, excluding the General Release language in Paragraph 1, such provision shall immediately become null and void, leaving the remaining provisions of this Release in full force and effect.

11.     Upon request from a prospective employer or other entity made to Defendants, Defendants will provide a neutral reference confirming dates of employment and position held by DiMauro, and will further state that it is company policy to only provide this information. Any such request shall be directed to Javier Vivas, or Mr. Vivas' successor or appropriate representative of the Defendants, as the case may be.

12.     Plaintiff agrees that she will not make any negative statement or cause or encourage others to make any statements (oral, written or otherwise) that defame, disparage, demean, or in any way criticize the personal or business reputation of Defendants, or otherwise disparage the Defendants, nor will she encourage others to do so. This provision does not prevent Plaintiff from speaking truthfully about her employment with Defendants or this Action. Similarly, the Defendants agree not to make any statements or cause or encourage others to make any statements (oral, written or otherwise) that defame, disparage, demean, or in any ways criticize the personal or business reputation of DiMauro. This provision does not prevent Defendants from speaking truthfully about DiMauro's employment with Defendants or this Action.

13.     This Release shall be binding upon and inure to the benefit of DiMauro's heirs, executors, administrators, successors, and assigns.

**MARIELE DIMAURO FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE AND HOURS CLAIMS SHE MIGHT HAVE AGAINST RELEASEES.**

7

**MARIELE DIMAURO IS ALSO ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS RELEASE AND SHE ACKNOWLEDGES HAVING DONE SO.**

MARIELE DIMAURO

Date:          09/24/2020          _____

189 CHRYSTIE STREET PARTNERS, LP

Date :                              _____

By : _____

Title :_____

VARIETY WORLDWIDE LLC

Date :                              _____

By : _____

Title :_____

SIMON HAMMERSTEIN

Date :                              _____

Title :_____

JAVIER VIVAS

MARIELE DIMAURO IS ALSO ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS RELEASE AND SHE ACKNOWLEDGES HAVING DONE SO.

MARIELE DIMAURO

Date:

_____

Date :   9/24/2020

189 CHRYSTIE STREET PARTNERS, LP

_____

By : _Simon Hammerstein_____

Title :_Partner_____

VARIETY WORLDWIDE LLC

Date :   9/24/2020

_____

By : _Simon Hammerstein_____

Title :_Partner_____

SIMON HAMMERSTEIN

Date :   9/24/2020

_____

Title : _Partner_____

JAVIER VIVAS

8

Date :  9/24/2020

Title :  General Manager

## RELEASE OF CLAIMS AND SETTLEMENT AGREEMENT

WHEREAS, Cassandra Ulwick ("Ulwick") alleges that she was formerly employed by 189 Chrystie Street Partners, LP, Simon Hammerstein, Variety Worldwide LLC, and Javier Vivas (collectively, "Defendants") and she has commenced an action in the United States District Court for the Southern District of New York captioned *Cassandra Ulwick vs. 189 Chrystie Street Partners, LP, Simon Hammerstein, Variety Worldwide LLC, Javier Vivas*, which was subsequently consolidated with *DiMauro v. 189 Chrystie Street Partners, LP et al.* and assigned Docket No. 1:20-cv-02619-JGK (the "Action"), in which she alleges that the Defendants failed to properly pay her in compliance with the Fair Labor Standards Act of 1938 ("FLSA") and the New York Labor Law ("NYLL"), that Defendants failed to provide a wage notice and/or wage statements in violation of the New York Wage Theft Protection Act ("WTPA"), that Defendants implemented a discriminatory pay structure on the basis of sex/gender and constructively discharged Ulwick in violation of the New York City Human Rights Law ("NYCHRL"), that 189 Chrystie Street willfully filed fraudulent information on Plaintiff's W-2 forms in violation of 26 U.S.C. § 7434, and that Defendants committed common law violations such as breach of an implied covenant of good faith and fair dealing, breach of an express and implied contract, fraud in inducement and fraudulent misrepresentation; and

WHEREAS, Defendants deny all of the allegations asserted by Ulwick in her Complaint and have denied and continue to deny that they have violated any law, rule or regulation or committed any wrongdoing against Ulwick; and

WHEREAS, contemporaneously with the execution of this Release, Ulwick is receiving from Defendants the gross amount of $23,000.00, in full settlement of any and all claims as set forth in paragraph 1 below; and

WHEREAS, the terms and conditions of this Release have been explained to Ulwick by her counsel, who was actively involved in the negotiation of the settlement and of this release, and she covenants that she understands the terms and agrees thereto,

NOW THEREFORE, IT IS AGREED AS FOLLOWS:

1.      In exchange for the payment by Defendants or on their behalf in the amount of $23,000.00;

(a)      Ulwick agrees and covenants that she will dismiss the Action with prejudice against Defendants based on the settlement described herein, and that she has not filed, and she will not cause to be filed, any other claims, actions or other proceedings against Defendants, their officers, directors, owners, shareholders, parents, affiliates, divisions, subsidiaries, members, managers, supervisors, agents, predecessors, professional employer organizations, insurers, and counsel and their agents and employees (collectively, "Releasees") at any time in the future arising out of any facts that are known to exist or that may exist through and including the date of execution of this Release regarding the payment of her wages during or after her employment. In the event that, for any reason, any complaint, appeal, suit, action, charge, claim and/or proceeding is filed or has already been filed by or on behalf of Ulwick other than the Action, she shall take all necessary steps to dismiss or withdraw same with prejudice and she shall not obtain or accept any recovery or relief therefrom;

(b)      Ulwick knowingly and voluntarily releases and forever discharges Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, commissions, controversies, agreements, promises, judgments, obligations, grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which she has raised in this Action or could have raised

2

in this Action against Releasees as of the date of execution of this Release, whether known or unknown, asserted or unasserted, whether brought on an individual basis or as part of a class or collective action.

   (c) It is Ulwick's intention that her execution of this Release will forever bar every claim, demand, cause of action, charge and grievance that is referenced in Paragraph 1(b) herein against Releasees existing at any time prior to and through the date of execution of this Release, and Ulwick covenants not to sue Releasees based on any released claims; and she will pay Releasees' reasonable attorneys' fees and costs incurred if she breaches that covenant.

   (d) Ulwick understands that the Release does not release any claims that she cannot lawfully release. This Release does not prohibit Ulwick from filing a charge with any governmental administrative agency, such as the EEOC, as long as she does not personally seek reinstatement, damages, remedies, or other relief as to any claim that she has released, any right to which she hereby waives.

   (e) In the event that Ulwick institutes, is a party to, or is a member of a class or collective that institutes any claim or action against Releasees arising from conduct which predates this Release, and which is referenced in Paragraph 1(b) herein, she agrees that her claims shall be dismissed or class or collective membership terminated immediately upon presentation of this Release, and she shall execute any papers necessary to achieve this end;

   (f) Ulwick affirms that as of the date of this Release she has been paid and/or has received all leave (paid and unpaid), compensation, tips, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid),

compensation, wages, bonuses, commissions and/or benefits are due to her, except as provided in this Release; and

   2.  In exchange for the promises made by Ulwick contained in Paragraph 1 above, Defendants agree to provide Ulwick's attorneys with three checks in the total gross settlement sum of twenty-three thousand dollars ($23,000.00), made payable as follows:

     (a) Six-thousand-nine-hundred dollars ($6,900.00), less applicable deductions and withholdings, payable to Ulwick, for which a Form W-2 will be issued pursuant to IRS regulations in 2020;

     (b) Six-thousand-nine-hundred dollars ($6,900.00) payable to Ulwick;

     (c) Nine-thousand two hundred dollars ($9,200.00) payable to John J. Zidziunas & Associates, as and for Ulwick's attorneys' fees and costs, said payments being for and in full consideration and satisfaction of all claims related to the payment of wages that Ulwick has or may have against Releasees, whether known or unknown, asserted or unasserted, including, but not limited to, all claims for legal or equitable relief, any alleged lost wages, back pay, lost income, lost commissions, lost bonuses, lost employee benefits, severance benefits, lost future wages, lost future pay, lost future commissions, lost future bonuses, lost future employee benefits, lost future income, and claims for interest, attorneys' fees, costs and disbursements based on any conduct occurring up to and including the date of the complete execution of this Release (the "Settlement Sum").

     (b)  The parties agree that the Settlement Sum will be paid within fourteen days of the date on which the Court issues an Order Approving the parties' Settlement.

     (c)  Should Defendants fail to timely make any of the payments set forth in paragraph 2(a) of this Agreement, Ulwick shall provide written notice, by certified mail, stating

that payment was not timely made.  Upon receipt of written notice, Defendants shall have ten days to make payment.  Notice should be sent to the attention of Brian Pete, Esq., 77 Water Street, Suite 2100, New York, NY 10005. Should Defendants fail to cure the late payment within ten (10) days of notification, Ulwick may immediately seek enforcement of the settlement agreement  as set forth in paragraph 9.

       3.     Ulwick understands and agrees that she would not be entitled to receive the Settlement Sum specified herein, except for her execution of this Release, and her fulfillment of all the promises contained in this document that pertain to her.

       4.     Ulwick acknowledges and agrees that neither Releasees nor their counsel, nor Ulwick's counsel, have made any representations to Ulwick regarding the tax consequences of any amounts paid pursuant to this Release.   To the extent there are any additional tax consequences to Ulwick or Defendants arising from the payment of such portion of the settlement amount other than those normally attendant to W-2 income, Ulwick agrees to indemnify and hold Releasees harmless for all additional taxes, interest and penalties.  Ulwick further agrees to indemnify and hold Releasees harmless for any costs, including attorneys' fees, associated with the enforcement of this indemnification provision, should such enforcement measures become necessary.

       5.     Ulwick agrees not to seek any interest, fees or costs and agrees to be responsible for the payment of her own attorneys' fees, costs and disbursements, except as provided in this Release.

       6.     Ulwick agrees to forego and withdraw any claims referenced in Paragraph 1(b), and further agrees to cooperate with Defendants to the extent necessary to obtain judicial approval of this settlement and dismissal of the Action.

5

7.      Ulwick acknowledges that Defendants have entered into this settlement solely for the purpose of avoiding the burdens and expense of protracted litigation.  Further, the parties agree that neither this Release nor the furnishing of consideration for the Release shall be construed as an admission that Defendants or any Releasee have violated any federal, state, or local law (statutory or decisional), ordinance, or regulation, or that Defendants or any Releasee has committed any wrong against Ulwick.

8.      This Release supersedes any prior agreements or understandings pertaining to the subject matter of this Release as addressed above. Ulwick acknowledges that she has not relied on any representations, promises or agreements of any kind made to her in connection with her decision to sign this Release. No other promises or agreements shall be binding or shall modify this Releasee unless in writing and signed by Releasees.

9.      This Release is made in the State of New York and shall be interpreted under the laws of said State. Its language shall be construed as a whole according to its fair meaning and not strictly for or against any Party. The Parties shall request that the Court retain jurisdiction over the Action solely for the purpose of enforcing this Agreement or determining breach of the Agreement. However, if the Court should refuse or decline to accept jurisdiction for any reason, the Parties agree that this Agreement may be enforced in a court of competent jurisdiction located in New York County, New York.

10.      Should any provision of this Release be declared illegal or unenforceable by any court of competent jurisdiction, and such provision cannot be interpreted or modified so as to be enforceable, excluding the General Release language in Paragraph 1, such provision shall immediately become null and void, leaving the remaining provisions of this Release in full force and effect.

11.     Upon request from a prospective employer or other entity made to Defendants, Defendants will provide a neutral reference confirming dates of employment and position held by Ulwick, and will further state that it is company policy to only provide this information. Any such request shall be directed to Javier Vivas, or Mr. Vivas' successor or appropriate representative of the Defendants, as the case may be.

12.     Plaintiff agrees that she will not make any negative statement or cause or encourage others to make any statements (oral, written or otherwise) that defame, disparage, demean, or in any way criticize the personal or business reputation of Defendants, or otherwise disparage the Defendants, nor will she encourage others to do so. This provision does not prevent Plaintiff from speaking truthfully about her employment with Defendants or this Action. Similarly, the Defendants agree not to make any statements or cause or encourage others to make any statements (oral, written or otherwise) that defame, disparage, demean, or in any ways criticize the personal or business reputation of Ulwick. This provision does not prevent Defendants from speaking truthfully about Ulwick's employment with Defendants or this Action.

13.     This Release shall be binding upon and inure to the benefit of Ulwick's heirs, executors, administrators, successors, and assigns.

**CASSANDRA ULWICK FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS RELEASE INTENDING TO WAIVE, SETTLE AND RELEASE ALL WAGE AND HOURS CLAIMS SHE MIGHT HAVE AGAINST RELEASEES.**

**CASSANDRA ULWICK IS ALSO ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS RELEASE AND SHE ACKNOWLEDGES HAVING DONE SO.**

7

CASSANDRA ULWICK

Date: 9/24/2020 _____

_____


189 CHRYSTIE STREET PARTNERS, LP

Date : _____

_____

By : _____

Title : _____


VARIETY WORLDWIDE LLC

Date : _____

_____

By : _____

Title : _____


SIMON HAMMERSTEIN

Date : _____

_____

Title : _____


JAVIER VIVAS

Date : _____

_____

Title : _____

8

CASSANDRA ULWICK

Date:

_____

Date : 9/24/2020

189 CHRYSTIE STREET PARTNERS, LP

By : Simon Hammerstein

Title : Partner

VARIETY WORLDWIDE LLC

Date : 9/24/2020

By : Simon Hammerstein

Title : Partner

SIMON HAMMERSTEIN

Date : 9/24/2020

Title : Partner

JAVIER VIVAS

Date : 9/24/2020

Title : General Manager

8