

**LEWIS BRISBOIS**
LEWIS BRISBOIS BISGAARD & SMITH LLP

Brian Pete
77 Water Street, Suite 2100
New York, New York 10005
Brian.Pete@lewisbrisbois.com
Direct: 212.232.1363

October 26, 2020

File No. 11414.813

**VIA ECF**
The Honorable John G. Koeltl
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *DiMauro v. 189 Chrystie Street Partners, LP et al.*
      *Ulwick v. 189 Chrystie Street Partners, LP et al.*
      Docket No.: 1:20-cv-02619-JGK

Dear Judge Koeltl:

> *The unredacted agreement relating to the non-FLSA Settlement (Doc. No. 30) may be filed under seal. There are only modest redactions that do not affect the public interest in the settlement particularly because it is a settlement of non-FLSA claims. So ordered.*
>
> */s/ John G. Koeltl*
> *U.S.D.J.*
> *10/26/20*

We are counsel to Defendants 189 Chrystie Street Partners, LP d/b/a The Box NYC, Variety Worldwide, LLC, Simon Hammerstein, and Javier Vivas (collectively, "Defendants") in the above-referenced matter. Pursuant to Section VI(A)(2) of Your Honor's Individual Practices, we write jointly with counsel for Plaintiffs Mariele DiMauro and Cassandra Ulwick ("Plaintiffs") (collectively the "Parties") to respectfully request that the Court permit the Parties to file their non-FLSA settlement agreement with the settlement amount and Plaintiffs' names redacted.[1] Attached hereto as Exhibit A is the parties' executed non-FLSA settlement agreement with proposed redactions and as Exhibit B, to be filed under seal, the unredacted version of the non-FLSA settlement agreement with the redactions highlighted. The confidentiality of the non-FLSA settlement agreement was a material term and factored into the monetary amount of the non-FLSA settlement. Both parties maintain a strong interest in keeping the terms of this agreement, Plaintiffs' names (which Plaintiffs have specifically requested), and the amounts therein confidential. Neither Plaintiffs nor Defendants wish for the amounts paid therein to be public knowledge. For example, Defendants have a legitimate

---

[1] Subsequent to the October 21, 2020 conference with the Court, Plaintiffs' counsel informed defense counsel that his clients do not consent to the agreement being publicly filed.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY
LOUISIANA • MARYLAND • MASSACHUSETTS • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK
NORTH CAROLINA • OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TEXAS • WASHINGTON • WEST VIRGINIA
4833-9327-9184.1

The Honorable John G. Koeltl
October 26, 2020
Page 2

concern that disclosure of amounts paid to resolve such claims is necessary to avoid prejudicing their position in settlement discussions in any subsequent litigations.

The Parties entered into bifurcated settlement agreements to settle Plaintiffs' FLSA and non-FLSA claims. On September 25, 2020, the Parties filed an application with the Court to seek approval of Plaintiffs' settlement of their FLSA claims against Defendants in accordance with *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). (Dkt. No. 26). The Parties did not file the non-FLSA settlement agreement as it did not require court approval for dismissal under *Cheeks*.

On October 21, 2020, the Parties held a fairness hearing with the Court. At the hearing, the Court stated that it is necessary for it to view the non-FLSA settlement agreement in order to evaluate the FLSA settlement agreement.

The Parties respectfully request that the Court permit them to file their non-FLSA settlement agreement with the settlement amount and Plaintiffs' names redacted (the latter of which Plaintiffs have specifically requested). In consideration of the settlement amounts, the Parties agreed to keep the settlement amounts in the non-FLSA settlement agreement confidential. Moreover, the non-FLSA settlement agreement is supported by a separate monetary consideration that should have no bearing on whether the settlement sum in the FLSA agreement is fair and reasonable.

As explained in the Parties' *Cheeks* application, Plaintiff DiMauro worked from September 20, 2017 through January 2020 and Plaintiff Ulwick worked from July 3, 2018 through January 2020 (the "recovery period") as servers and performed work on average 10-15 hours a weeks. From the start of her employment to December 30, 2017, DiMauro was paid a cash wage in the amount of $8.75 and tip credit taken was $2.25; from December 31, 2017 until December 30, 2018, she was paid a cash wage in the amount of $8.75 and tip credit taken was $4.25; from December 31, 2018 until the end of Plaintiff's employment, she was paid a cash wage in the amount of $10.00 (after Defendants corrected the minimum wage paid) and the maximum tip credit taken was $5.00. From the start of her employment to December 30, 2018, Ulwick was paid a cash wage in the amount of $8.75 and tip credit taken was $4.25; from December 31, 2018 until the end of Plaintiff's employment, she was paid a cash wage in the amount of $10.00 (after Defendants corrected the minimum wage paid) and the maximum tip credit taken was $5.00.

Plaintiffs allege that Defendants violated the FLSA by requiring them to give their tips to employees whose primary duties were non-tipped duties and were ineligible to receive tips through employer-mandated tip sharing. They further allege that Defendants did not give proper notice to employees regarding Defendants' taking a tip credit to satisfy the minimum wage, or otherwise inform the employees of the provisions of 29 U.S.C. § 203(m). Plaintiffs also allege that Defendants violated the FLSA by improperly taking a tip credit to satisfy Plaintiffs' minimum wage even though other employees who received some of Plaintiffs' tips did not participate in the tip pooling. Finally, Plaintiffs allege that they spent substantial time engaged in non-tipped work (e.g., setting up the bar prior to opening and reached out to customers on social media to promote The Box. through their social media accounts) and that the Defendants applied a tip credit to the non-tipped work.

The Honorable John G. Koeltl
October 26, 2020
Page 3

Assuming Plaintiffs were not provided a proper tip notice, the total recovery of tip credit taken for each hour that Plaintiffs allegedly worked would be the following: Ulwick's maximum recovery would be approximately $4,363.54 and DiMauro's would be approximately $5,079.99. Then, should the Court find that Defendants "willfully" violated the FLSA, Plaintiffs would be entitled to liquidated damages that would double any amount each Plaintiff is owed to approximately $9,864.98 for DiMauro and $8,147.82 for Ulwick. Accordingly, the agreement to pay Plaintiffs DiMauro $28,000.00 and Ulwick $23,000.00 provides a fair compromise based on the risks that the parties face in moving forward in litigation and the Plaintiffs' possible recovery.

In light of the foregoing, the Parties maintain that the FLSA settlement is fair and reasonable. Because the Parties believe that the settlement allocation in the non-FLSA settlement agreement has no bearing on the fairness of the settlement amount in the FLSA agreement, and they maintain a strong privacy interest in its terms, the Parties respectfully request that they be permitted to file the non-FLSA settlement agreement with the settlement amount and Plaintiffs' names redacted.

We thank you the Court for its time and attention to this matter.

Respectfully,

*Brian Pete*

Brian Pete for
LEWIS BRISBOIS BISGAARD & SMITH LLP


cc:   All counsel of record (via ECF)